IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| HORMEL FOODS CORPORATION, | ) | |
| | ) | No. 9-2011 EJM |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| CRYSTAL DISTRIBUTION SERVICES, | ) | |
| Defendant, | ) | |

This matter is before the court on plaintiff's resisted Motion for Partial Summary Judgment, and on defendant's resisted Motion for Summary Judgment as to All Counts of the Complaint and on Defendant's Fifth, Ninth, and Tenth Affirmative Defenses, both filed June 1, 2010. Briefing concluded on August 9, 2010. Defendant's motion granted in part and denied in part, plaintiff's motion denied.

Plaintiff Hormel Foods Corporation (Hormel), a Delaware corporation with its principal place of business in Minnesota, brings this action seeking damages from defendant Crystal Distribution Services (Crystal), an Iowa corporation with its principal place of business in Iowa. The amount in controversy exceeds $75,000. The court has jurisdiction pursuant to 28 USC §1332.

Hormel and Crystal were parties to a Warehouse Agreement (Agreement) providing for Crystal's storage of Hormel's food products at a Crystal warehouse in Waterloo, Iowa. In the summer of 2008, flooding damaged Hormel's stored food products. Hormel's claims are as follows:

Count 1: Breach of Contract (indemnification): Hormel claims the Agreement required Crystal to indemnify Hormel for loss due to Crystal's negligence, and that Crystal failed to do so, in breach of the Agreement.

Count 2: Breach of Contract (insurance/bond): Hormel claims the Agreement required Crystal to provide a warehouseman's legal liability insurance policy or a bond covering all risks of loss, regardless of the nature of the risk or cause of loss, and that Hormel failed to do so.

Count 3: Breach of Contract (to maintain facilities): Hormel asserts the Agreement required Crystal to maintain its facilities in good condition and repair, and to indemnify Hormel against any loss or damage to goods stored in the facility. Hormel claims Crystal failed to maintain the facilities in not taking steps to prevent the backup of water into the basement of its storage facility, to Hormel's damage.

Count 4: Negligence: Hormel claims Crystal was negligent in its duty of care to Hormel as required in the Agreement and in the dealings of warehousemen, resulting in the loss of Hormel's food products.

Crystal's Counterclaims are as follows:

Counterclaim Count 1: Breach of Contract: Crystal claims Hormel breached the terms of the warehouse receipts issued for storage of Hormel's food products by failing to pay Crystal the cost of disposing of the products, approximately $98,767.45 for transportation, labor, and landfill charges.

Counterclaim Count 2: Account Stated: Crystal claims it invoiced Hormel $98,767.45 for disposal costs of the products, has demanded payment thereon, and Hormel has failed to pay.

Counterclaim Count 3: Quantum Meruit (Alternative Counterclaim): Crystal claims it disposed of the products for Hormel and to Hormel's benefit, with the expectation of compensation from Hormel, and seeks $98,767.45 from Hormel for the unpaid disposal costs.

Defendant Crystal seeks summary judgment on all claims in plaintiff's Complaint, as well as on its Fifth, Ninth, and Tenth Affirmative Defenses.

First, Crystal seeks summary judgment on Counts 1 and 3, asserting that those counts raise claims for indemnification. Crystal asserts that under Iowa law, an indemnification clause does not apply to claims between parties to an agreement, but rather only obligates the indemnitor to protect the indemnitee against claims made by persons not a party to the provision. Crystal therefore asserts that since Hormel is not seeking damages in Counts 1 or 3 for any claim made by a third party, it is entitled to summary judgment. Alternatively, as to Count 3, Crystal asserts there is no evidence that loss occurred due to its failure to keep facilities in good condition and repair, and therefore it is entitled to summary judgment on Count 3. Crystal further asserts that to the extent the Count 3 indemnification claim is based upon paragraph 16 of the Agreement, the Agreement is ambiguous and should be read against drafter Hormel, such that the provision pertains only to loss resulting from Crystal's failure to keep facilities in good repair, rather than *any* loss. Crystal urges

3

this construction is consistent with paragraphs 3 and 12 of the Agreement. Additionally, Crystal asserts that maintenance of facilities in good order and repair is undefined, should be given its ordinary meaning, and there exists no evidence that the backup of water in the warehouse was the result of Crystal's failure to keep the facility in good order and repair.

Crystal seeks summary judgment on Count 2, which is based upon the requirement in paragraph 28 of the Agreement that Crystal "maintain a warehouseman's legal liability policy covering all risks of loss or shall provide satisfactory bond ... covering all risks of loss." In support, Crystal asserts it complied by providing a warehouseman's legal liability policy, and that Hormel's risk manager admitted the policy was in compliance with the Agreement. Alternatively, Crystal asserts that it is undisputed that obtaining a warehouse liability policy covering "all risks of loss" is impossible as no such policy exists, and therefore Crystal is entitled to summary judgment based upon impossibility of performance.

Crystal seeks summary judgment on Count 4 (and on its Tenth Affirmative Defense), asserting that the claims in Count 4 are based upon an alleged failure to conform to a standard of care required in the Agreement, there is no allegation of any damages separate from loss of product, and therefore Count 4 is barred by the economic loss doctrine.

Crystal seeks summary judgment on its Fifth Affirmative Defense, asserting that pursuant to Sec. 9(d) of its warehouse receipt, Crystal's liability, if any, is limited in accordance with the provisions of the warehouse receipt's terms and conditions.

Crystal seeks summary judgment on its Ninth Affirmative Defense, asserting that it is not liable for any consequential damages pursuant to the provisions of Sec. 9(f) of its warehouse receipt providing "[i]n no event shall [Hormel] be entitled to incidental, special, punitive, or consequential damages."

Finally, Crystal asserts that any damages Hormel recovers under Counts 1, 2, or 3, must be reduced by insurance and other payments received. In support, Crystal urges that Hormel received $3,016,126 from insurers on a $4,016,126 claim on its loss in this matter, that the insurance payment is a collateral source payment under Iowa law, and that Iowa's collateral source rule does not apply to breach of contract actions. Accordingly, Crystal urges that any damages awarded Hormel must be reduced by payments received from its insurers, and any other source.

Hormel seeks partial summary judgment, asserting that there exists no disputed issue of material fact as to Crystal's breach of the Agreement (1) to indemnify Hormel against all risks of loss by provision of insurance or bond, (2) to keep and maintain facilities in good condition and repair, (3) to keep the warehouse clean and sanitary, and (4) to store Hormel's refrigerated product at or below 35 degrees Fahrenheit.

> Fed. R. Civ. P. 56(c) provides that summary judgment shall be entered if the "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give him the benefit of all reasonable inferences. Kegal v. Runnels, 793 F2d 924, 926 (8th Cir. 1986). However, parties opposing a summary judgment motion may

not rest merely upon the allegations in their pleadings. Buford v. Tremayne, 747 F2d 445, 447 (8th Cir. 1984). The opposing parties must resist the motion by setting forth specific facts showing that there is a genuine issue of material fact for trial. Id., (citing Fed. R. Civ. P. 56(e) and Burst v. Adolph Coors Co., 650 F2d 930, 932 (8th Cir. 1981)).

Green v. St. Louis Housing Authority, 911 F2d 65, 68 (8th Cir. 1990).

At the outset, it is undisputed that Iowa law applies. The question of whether a party is liable for indemnity is a matter for the court to determine as a matter of law. Cochran v. Gehrke, Inc., 293 FS2d 986, 995-996 (ND IA 2003) (citations omitted).

As noted, Crystal seeks summary judgment on Counts 1 and 3, urging that those claims are brought upon indemnification provisions in the Agreement, specifically, paragraphs 12 and 16.

Paragraph 12 provides: [Crystal] shall indemnify and save Hormel harmless from and against any and all claims for loss or damage to product which results from the negligence of [Crystal].

Paragraph 16 provides [Crystal] recognizes that it will be storing food product and agrees that it will keep and maintain its facilities in good condition and repair and shall indemnify Hormel against any loss or damage to goods that may be stored in said facilities.

In Estate of Pearson ex re. Latta v. Interstate Power and Light Co., 700 NW2d 333 (Iowa 2005), reviewing a clause where a customer agreed to indemnify a company for injury to person or property arising out of the customer's use of the

company's service, the Court noted that "[t]he common meaning of 'indemnify' is to 'reimburse (another) for a loss suffered because of a third party's or one's own act or default." Id. at 344 (citation omitted). However, where the Agreement expressly and unambiguously provides that Crystal shall indemnify Hormel against product loss arising from Crystal's own acts (Agreement, para. 12), i.e., between the parties to the Agreement, the court finds the indemnification provision is not, as urged by defendant, limited to claims brought by persons not a party to the Agreement. See NevadaCare, Inc. v. Department of Human Services, 783 NW2d 459, 471 (Iowa 2010) (discussing whether indemnification provision applies to claims between parties, or only to third party claims, holding party to contract cannot use an indemnity clause to shift attorney fees between the parties *unless* the language of the contract shows an intent to clearly and unambiguously do so). See also McNally & Nimergood v. Neumann-Kiewit Constructors, Inc., 648 NW2d 564, 570-573 (Iowa 2002) (indemnification contract will not be construed to permit indemnitee to recover for its own negligence unless intention of parties is clearly and unambiguously expressed).

As the court concludes the Agreement expressly and unambiguously provides for application to claims brought by a party to the contract, rather than only third parties, Crystal's motion shall be denied as to Counts 1 and 3 on this point.

Crystal further asserts that to the extent the Count 3 indemnification claim is based upon paragraph 16 of the Agreement, the Agreement is ambiguous and

7

should be read against drafter Hormel, such that the provision pertains only to loss resulting from Crystal's failure to keep facilities in good repair, rather than *any* loss.

The test for ambiguity is an objective inquiry as to whether the language is fairly susceptible to two or more interpretations. <u>Iowa Fuel & Minerals, Inc. v. Iowa State Bd. Of Regents</u>, 471 NW2d 859, 863 (Iowa 1991). In light of the record, the court agrees that paragraph 16 is ambiguous, and can be read to require indemnification for loss due to failure to keep facilities in good condition and repair, or can be read to require indemnification against any loss, without regard to the condition of facilities. Applying the rule that where ambiguities exist, they are strictly construed against the drafter (here Hormel), <u>see</u> <u>id.</u>, upon the record it is the court's view that paragraph 16 of Agreement must be read to pertain to loss resulting from failure to maintain the facilities in good condition and repair, rather than *any* loss. The court concludes there exists a disputed issue of material fact as to whether loss arose from Crystal's failure to maintain the facilities in good condition and repair, and therefore Crystal's motion for summary judgment on Count 3 shall be denied on this point.

Upon the foregoing, defendant's Motion for Summary Judgment on Counts 1 and 3 shall be denied.

Next, Crystal seeks summary judgment on Count 2, urging that Hormel admitted Crystal complied with paragraph 28 of the Agreement in procuring an appropriate certificate of insurance, or alternatively, that compliance was impossible, as no policy exists that would cover all risks of loss.

Paragraph 28 of the Agreement provides in part: "Crystal shall maintain a warehouseman's legal liability policy covering all risks of loss or shall provide satisfactory bond to Hormel, covering all risks of loss."

It is the court's view that disputed issues of fact exist precluding the entry of summary judgment on Count 2.

Crystal seeks summary judgment on Count 4 and its Tenth Affirmative Defense, urging that Hormel alleges a cause of action for negligence therein, that the duties claimed arise under the Agreement, and therefore the claim is barred by the economic loss doctrine. Hormel resists, urging that it sustained direct physical damages to products that were in defendant's care.

"The economic loss doctrine was conceived to prevent litigants with contract claims from litigating them inappropriately as tort claims." Van Sickle Const. Co. v. Wachovia Commercial Mortg., Inc., 783 NW2d 684, 693 (Iowa 2010). Discussing the economic loss doctrine, the Iowa Court of Appeals observed that "a plaintiff cannot maintain a claim for purely economic damages arising out of a defendant's negligence." Rozeboom Dairy, Inc. v. Valley Dairy Farm Automation, Inc., 2011 WL 662338, *6 (Iowa App. 2011)(citations omitted). In considering the distinction between tort and contract, the court observed that in making that distinction, where the only damage was a loss of the benefit of the bargain or to the product itself, the court has consistently found the proper remedy to be in contract. Conversely, where the product was dangerous to the user and caused injuries extending to property other than the product itself, recovery in tort has been allowed. Id. at 6.

9

In light of the foregoing authorities, it is the court's view that where, as here, the parties had a contract wherein defendant was to warehouse products for plaintiff, and the damage for defendant's claimed failure in the provision of the service was to the product itself, the negligence claim in Count 4 is barred by the economic loss doctrine. The nature of plaintiff's claim in Count 4 is unfulfilled expectations in the provision of a service, see paragraph 42. of plaintiff's Complaint, the remedy for which lies in contract, rather than tort. See Audio Odyssey, Ltd. v. US, 243 FS2d 951, 964 fn.6 (SD IA 2003)("Iowa has consistently held the remedy for unfulfilled expectations of service...rest in contract, not in tort law."). Accordingly, defendant's motion shall be granted as to Count 4 and its Tenth Affirmative Defense.

Next, defendant seeks summary judgment on its Fifth Affirmative Defense, asserting that its liability, if any, is limited pursuant to Section 9(d) of the warehouse receipts, the form of which Crystal asserts provides:

Section 9 – Liability and Limitation of Damages

(d) In the event of loss, damage or destruction of goods for which company is legally liable, storer declares that company's liability shall be limited to the lesser of the following: (1) The actual cost to storer of replacing or reproducing the lost, damaged and/or destroyed goods together with transportation costs to the warehouse, (2) the fair market value of the lost, damaged and/or destroyed goods on the date storer is notified of loss, damage or destruction, (3) 50 times the monthly storage charge applicable to such lost, damaged and/or destroyed goods, (4) $.50 per pound for said lost, damaged and/or destroyed goods provided, however that within a reasonable time after receipt of this warehouse receipt, storer may, upon written request increase company's liability on all or part of the goods in which case an increased charge will be made based upon such increased valuation; further provided that no such request shall be valid unless made before loss, damage or destruction to any portion of the goods has occurred.

Additionally, defendant seeks summary judgment on its Ninth Affirmative defense, asserting that plaintiff cannot recover consequential damages pursuant to Section 9(f) of the warehouse receipts, the form of which Crystal asserts provides as follows:

Section 9- Liability and Limitation of Damages

(f) The company's liability referred to in Section 9(d) shall be the storer's exclusive remedy against company for any claim or cause of action whatsoever relating to loss, damage, and/or destruction of goods and shall apply to all claims including inventory shortage and mysterious disappearance claims unless storer proves by affirmative evidence that company converted the goods to its own use. Storer waives any right to rely upon any presumption of conversion imposed by law. In no event shall Storer be entitled to incidental, special, punitive, or consequential damages.

In support, defendant asserts the Agreement expressly incorporates the terms and conditions of the warehouse receipts. Plaintiff resists, urging that a reference in the Agreement to a warehouse receipt is insufficient to incorporate the receipt, the receipt was not fully set out in the Agreement, the receipts did not exist when the Agreement was executed, the warehouse receipt form urged by Crystal was not consistently used, and that Crystal has not produced warehouse receipts for all products received from Hormel Foods.

Under the doctrine of incorporation by reference, one document becomes part of another simply by reference as if the former is fully set out in the latter. Hofmeyer v. Iowa District Court for Fayette County, 640 NW2d 225, 228 (Iowa 2001). Whether the other document is incorporated by reference is a question of law, requiring clear and specific reference as a prerequisite to incorporation by reference. Id.

It appears undisputed that the Agreement expressly referred to warehouse receipts in paragraphs 11, 20, and 32. Paragraph 11 provides in part: "[T]o the extent any terms of this Agreement conflict with any language contained on Crystal's warehouse receipts or other documents, the terms and conditions of this Agreement shall control." Paragraph 20 provides in part: "Immediately upon receipt of shipments, Crystal shall issue ...a warehouse receipt listing case count ... and properly noting any damages...." Paragraph 32 provides in part: "To the extent that any discrepancy between the terms ... in this Agreement and those contained in any Agreement provided by the warehouse are in conflict, the terms ...contained ... in this Agreement shall control." In addition to the express reference to warehouse receipts in the Agreement, in particular paragraph 11, Crystal urges that it is undisputed that the warehouse receipt forms have been substantially unchanged, including as to liability for loss as a function of the monthly storage rate or per pound, since the inception of the Agreement, and that there is no disputed issue of material fact as to whether the warehouse receipts are in conflict with the Agreement.

It appears there exists a disputed issue of fact as to the content of the specific warehouse receipts sought to be incorporated by reference, and therefore the motion for summary judgment on Crystal's Fifth and Ninth Affirmative Defenses shall be denied.

Finally, Crystal asserts that any damages Hormel recovers under Counts 1, 2, or 3 must be reduced by insurance and other payments it received, and that the collateral source rule is inapplicable in this matter.

12

The collateral source rule provides that a plaintiff's recovery of damages against a tort defendant are not reduced by sums the plaintiff receives from collateral sources. Midland Mutual Life Ins. Co. v. Mercy Clinics, Inc., 579 NW 2d 823, 828 (Iowa 1998). For the reasons discussed in Midland Mutual, it is the court's view that the application of the collateral source rule in this action for breach of contract on Counts 1, 2, and 3, would contravene the compensatory principle of damages in contract actions, by permitting a damage award to the nonbreaching party in excess of that necessary to compensate it for the claimed breach. Id. at 830. Accordingly, Crystal's motion for summary judgment shall be granted as to the inapplicability of the collateral source rule.

In sum, upon the foregoing, Crystal's Motion for Summary Judgment shall be denied as to Counts 1, 2, and 3, granted as to Count 4 and Crystal's Tenth Affirmative Defense, denied as to Crystal's Fifth and Ninth Affirmative Defenses, and granted as to the inapplicability of the collateral source rule.

Turning to plaintiff's Motion for Partial Summary Judgment, plaintiff states that while there exists a disputed issue of fact as to the amount of damages, plaintiff seeks summary judgment as to liability on its claim that defendant breached paragraph 28 of the Agreement by failing to indemnify plaintiff either by warehousemen's legal liability insurance or bond for all risks of loss, that defendant breached paragraph 16 of the Agreement by failing to maintain the warehouse facilities in good condition and repair and by failing to indemnify plaintiff against any

loss[1], that defendant breached paragraph 18 of the Agreement by failing to keep the facilities in clean and sanitary condition, and breached paragraph 30 of the Agreement to maintain Hormel product at 35 degrees Fahrenheit or lower (as set forth in Appendix C to the Agreement). Plaintiff further seeks summary judgment on defendant's counterclaims for the cost of product disposal, asserting that Counterclaims 1 (breach) and 2 (account stated) are based upon non-binding warehouse receipts, and Counterclaim 3 (quantum meruit) is based upon an assertion of expectation of compensation outside the amounts provided for in the Agreement, and that Hormel was not obligated to pay for any service in excess of the Agreement.

It is the court's view that there exist disputed issues of material fact precluding entry of summary judgment as to the matter of breach of paragraphs 16, 18, 28, and 30 of the Agreement, as well as defendant's counterclaims.

It is therefore

ORDERED

1. Defendant Crystal's Motion for Summary Judgment denied as to Counts 1, 2, and 3, granted as to Count 4 and Crystal's Tenth Affirmative Defense, denied as to Crystal's Fifth and Ninth Affirmative Defenses, and granted as to the inapplicability of the collateral source rule.

---

1. As noted earlier herein, it is the court's view that paragraph 16 of the Agreement must be read to pertain to loss resulting from failure to maintain the facilities in good condition and repair, rather than any loss.

2. Plaintiff's Motion for Partial Summary Judgment denied.

May 27, 2011.

_Edward J. McManus_
Edward J. McManus, Judge
UNITED STATES DISTRICT COURT