IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| HORMEL FOODS CORPORATION, | |
|---|---|
| Plaintiff, | No. C09-2011 |
| vs. | RULING ON POST-TRIAL MOTIONS |
| CRYSTAL DISTRIBUTION SERVICES, INC., | |
| Defendant. | |

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  RELEVANT FACTS AND PROCEEDINGS . . . . . . . . . . . . . . . . . . 2

III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.  *Crystal's Motion* . . . . . . . . . . . . . . . . . . . . . . . 3
         1.  *Redaction of the Warehouse Receipt Prior to Admission* . . 3
         2.  *Submission of Instruction Number 6* . . . . . . . . . . . 6
         3.  *Evidence Involving Warehouseman's Insurance Policy* . . . 8
         4.  *Proffered Testimony of Mark Ruddy* . . . . . . . . . . . . 9
         5.  *Recovery for Damages Reimbursed by a Collateral Source* . 10
         6.  *Evidence Regarding Subrogation Agreement* . . . . . . . 10
         7.  *Claim for Indemnification.* . . . . . . . . . . . . . . . 11
     B.  *Hormel's Motion* . . . . . . . . . . . . . . . . . . . . . . 11

IV.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on two post-trial motions filed by the parties. The first is a Motion to Amend Judgment to Include Pre-Judgment Interest (docket number 141) filed by Plaintiff Hormel Foods Corporation ("Hormel") on April 18, 2012. Defendant Crystal Distribution Services, Inc. ("Crystal") filed a Response (docket number 146) on May 7. Hormel filed a Reply (docket number 148) on May 8.

Also before the Court at this time is a Motion for Judgment as a Matter of Law, or, in the Alternative, to Alter or Amend Judgment, or, in the Alternative, Motion for New Trial (docket number 156) filed by Crystal on May 15. Hormel filed a Resistance (docket number 163) on May 31, and Crystal filed a Reply (docket number 164) on June 8.

Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. RELEVANT FACTS AND PROCEEDINGS

On February 23, 2009, Hormel filed a complaint seeking judgment against Crystal for damages sustained to products owned by Hormel and stored in Crystal's warehouse. In June 2008, flood water entered the warehouse, damaging meat products stored in the lower level. Hormel asserted three counts of breach of contract and one count of negligence. Crystal filed a counterclaim seeking reimbursement for the cost of disposing of the products.

Both parties filed motions for summary judgment. Judge Edward J. McManus denied Hormel's motion for partial summary judgment, and granted Crystal's motion for summary judgment, in part. Among other things, Judge McManus concluded that pursuant to the economic loss doctrine, Hormel's remedy lies in contract, rather than in tort. Accordingly, Count IV of the complaint was dismissed. With the parties' consent, the case was subsequently referred to the undersigned magistrate judge for all further proceedings, pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73.

This matter came on for trial to a jury beginning on April 9, 2012. On April 16, the jury returned a verdict in favor of Hormel. Pursuant to the jury's verdict, the Court ordered the clerk of court to enter judgment in favor of Hormel and against Crystal in the amount of $4,016,126. Judgment was entered for that amount on April 17, 2012.

On April 18, Hormel timely filed its instant motion, asking the judgment be amended to include prejudgment interest. On May 15, Crystal timely filed its instant motion, asking that it be awarded judgment as a matter of law, the judgment be amended to reduce the amount of damages awarded, or a new trial ordered.

## III. DISCUSSION

### A. Crystal's Motion

The Court will first consider Crystal's motion. Crystal seeks judgment as a matter of law pursuant to FED. R. CIV. P. 50(b) or, alternatively, an amended judgment or new trial pursuant to FED. R. CIV. P. 59. In its supporting memorandum, Crystal asserts the Court erred in certain evidentiary rulings, misapplied the law, improperly instructed the jury, and there was insufficient evidence to support a finding that Hormel's insurers have a right to subrogation. The Court will address the arguments in the order presented in Crystal's brief.

#### 1. Redaction of the Warehouse Receipt Prior to Admission

Crystal first argues the Court erred in requiring redaction of section 9(d) of the warehouse receipt prior to its admission at trial.[1] Section 9(d) purports to limit Crystal's liability to the lesser of four measures. Here, Crystal argues its liability is limited to 50 times the monthly storage charge. Hormel argues the limitation of liability found in section 9(d) of the warehouse receipt conflicts with the Warehouse Agreement entered into between the parties and, pursuant to the terms of the Agreement, has no application here.

This issue was raised by Hormel in a pretrial motion *in limine* and was addressed by the Court at that time. The Court found that section 9(d) of the warehouse receipt – purporting to limit Crystal's liability – conflicts with the Warehouse Agreement entered into between the parties. The Warehouse Agreement provides that if a conflict exists between the terms of the Agreement and the terms of the warehouse receipts, then the language found in the Agreement "shall control" over language contained in the warehouse receipts.[2]

---

[1] *See* Crystal's Exhibit 2005-B.

[2] The Warehouse Agreement states:
　　[T]o the extent any terms of this Agreement conflict with any
(continued...)

3

The Warehouse Agreement requires Crystal to indemnify Hormel for "any and all claims for loss or damage to product which results from the negligence of [Crystal], its employees and agents."[3] In its ruling on Hormel's motion *in limine*, the Court concluded that "the terms of the warehouse receipts which purport to limit Crystal's liability to 50 cents per pound conflict with the Warehouse Agreement, which requires Crystal to pay 'any and all' losses resulting from its negligence."[4] Crystal argues this was error. Crystal asserts that the reference to "any and all claims for loss or damage to product" in paragraph 12 of the Warehouse Agreement refers to the *types* of claims which may be brought, rather than the "quantum of loss" addressed in section 9(d) of the warehouse receipts. Crystal asks that the Court alter and amend the judgment in this case, reducing the amount of damages to 50 times the monthly storage charge[5] or, alternatively, order a new trial on damages.

---

[2](...continued)
    language contained on [Crystal's] warehouse receipts or other documents, the terms and conditions of this Agreement shall control.

Hormel's Exhibit 1 at 6. The Agreement also states:
    To the extent that any discrepancy between the terms and conditions contained in this Agreement and those contained in any Agreement provided by the warehouse are in conflict, the terms and conditions contained and embodied in this Agreement shall control.

Hormel's Exhibit 1 at 13.

[3] Hormel's Exhibit 1 at 7.

[4] Ruling on Motions *in Limine* (docket number 120) at 13. At that time, Crystal argued that Hormel's recovery was limited to 50 cents per pound – one of the other measures found in section 9(d) of the warehouse receipt.

[5] Crystal does not assert what that amount would be here and, as noted by Hormel in its resistance, the amount is not readily ascertainable from the record made at trial.

FEDERAL RULE OF CIVIL PROCEDURE 59(a) authorizes the court to grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The principal purpose of granting a new trial is to prevent a miscarriage of justice. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011). A new trial may be ordered if the court errs in an evidentiary ruling, resulting in prejudice to the movant. *Lovett v. Union Pacific R. Co.*, 201 F.3d 1074, 1080 (8th Cir. 2000). Crystal argues that paragraph 12 of the Warehouse Agreement is not in conflict with section 9(d) of the warehouse receipts and, at the least, the jury should have decided whether the terms of the warehouse receipts limited the amount of Hormel's recovery.

As indicated in my ruling on Hormel's motion *in limine*, I believe the language found in the Warehouse Agreement is clear and unambiguous. Crystal agreed, without limitation, to indemnify Hormel for *all* claims of damage resulting from Crystal's negligence. While Crystal now claims that "any and all" refers to the type of claim, rather than the amount of the claim, no such limitation is found in the parties' Agreement. Crystal essentially asks the Court to amend the contract to read "any and all *types* of claims . . ." "The Court cannot rewrite the contract which the parties have made so as to express an agreement which they did not enter into." *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa App. 1998). Nothing in the Agreement limits the amount of Hormel's recovery. Instead, Crystal agreed to indemnify Hormel for *all* claims of damage.

Crystal's efforts to limit its liability by language found in its warehouse receipts is expressly prohibited by the Warehouse Agreement, which unequivocally states the terms of the Agreement control any conflict between the two documents.[6] I remain convinced that the Warehouse Agreement precludes Crystal from arguing its liability is limited by language found in section 9(d) of the warehouse receipts. Accordingly, the Court did not err in requiring a redaction of the warehouse receipt prior to its admission, and Crystal is not entitled to an amended judgment or new trial on this ground.

---

[6] *See* Hormel's Exhibit 1 at 6 and 13.

5

## 2. Submission of Instruction Number 6

Next, Crystal argues the Court erred in its instructions to the jury. Final Instruction Number 6 instructed the jury that in order to recover on its claim, Hormel must prove, among other things, the following:

> 3. That Crystal breached the contract in one or more of the following ways:
>
>    (a) In failing to pay Hormel for damage to Hormel's products resulting from Crystal's negligence; or
>
>    (b) In failing to maintain a warehouseman's legal liability policy covering all risks of loss, or providing a satisfactory bond covering all risks of loss; or
>
>    (c) In failing to keep its facilities in a clean and sanitary condition or in good repair; or
>
>    (d) In failing to keep the products stored at specified temperatures.

Final Instruction Number 6 (docket number 131 at 6). Crystal asserts the instruction was faulty. Specifically, Crystal argues the Court should have included a "negligence standard" in subparts (c) and (d).

Hormel's Complaint included four counts – three counts of breach of contract and one count of commonlaw negligence.[7] Hormel's first contract claim (Count I) sought indemnification pursuant to paragraph 12, found in Section V of the Warehouse Agreement. As discussed above, Crystal agreed to indemnify Hormel for "any and all claims for loss or damage to product which results from the negligence of [Crystal], its employees and agents." Hormel's second contract claim (Count II) arises from paragraph

---

[7] Relying on the economic loss doctrine, Judge McManus dismissed Hormel's negligence claim (Count IV) as part of his Ruling on Crystal's motion for summary judgment.

6

15, found in section VI of the Warehouse Agreement, requiring Crystal to maintain adequate insurance.[8] Hormel's final contract claim (Count III) alleged Crystal failed to maintain its facilities as required by the Warehouse Agreement. Specifically, paragraph 16, found in section VII of the Agreement, provided that Crystal "will keep and maintain its facilities in good condition and repair and shall indemnify HORMEL against any loss or damage to goods that may be stored in said facilities." Paragraph 18, also found in section VII, required Crystal to keep the warehouse "in a clean and sanitary condition." Finally, Crystal agreed in paragraph 30, found in section X of the Warehouse Agreement, to maintain Hormel's products at certain temperature specifications, as set forth in Appendix C.

Those portions of the contract which required Crystal to maintain its facilities in a clean and sanitary condition and in good repair, and requiring it to store the products at a specified temperature, did *not* limit its liability to negligence. That is, pursuant to the terms of the parties' Agreement, if Crystal failed to maintain its facilities in a clean and sanitary condition or in good repair, then it breached the contract regardless of whether its failure to comply with the Agreement was negligent. Similarly, if Crystal failed to store the food products at a specified temperature, then it breached the contract regardless of whether the failure to comply with the Agreement resulted from its negligence.

When objections were taken to the instructions at the time of trial, Crystal's counsel noted that paragraph 11 of the Warehouse Agreement incorporated the Uniform Commercial Code in determining the parties' "duties and obligations." Crystal asserts this imposes a negligence standard. As noted by Hormel, however, the parties were free to contract to a standard other than that set forth in the Uniform Commercial Code. I believe that was done here. Crystal cites no authority for its argument that liability must be tied to negligence notwithstanding the parties' Agreement. In executing the Warehouse Agreement, the parties recognized that the contract may conflict with the Uniform

---

[8] The jury found for Crystal on this claim.

7

Commercial Code, and specifically agreed in paragraph 11 that "[t]o the extent any of the terms of the Uniform Commercial Code and this Agreement may be inconsistent, the terms and conditions embodied in this agreement, shall control and modify the Uniform Commercial Code."[9] Accordingly, I believe Final Instruction Number 6 correctly advised the jury regarding the ways in which Hormel claimed that the contract had been breached. Since there was no error, Crystal is not entitled to a new trial on this ground.

The Court notes parenthetically that even *if* it erred by failing to include a negligence standard in subparts (c) and (d) of instruction number 6, there was no prejudice to Crystal. That is, in order to recover on its claim for breach of contract, Hormel was not required to prove that Crystal breached the contract in *all* of the ways alleged. Rather, Hormel was only required to prove that Crystal breached the contract in "one or more" of the ways alleged in its Complaint. Crystal concedes the jury was properly instructed in subpart (a) regarding liability based on negligence. In response to questions on the verdict form, the jury concluded that Hormel proved that Crystal had breached the contract "by failing to pay Hormel for damage to Hormel's products resulting from Crystal's negligence."[10] Accordingly, even if the jury was erroneously instructed on Count III of Hormel's claim, it found that Hormel was entitled to recover under Count I.

### 3. *Evidence Involving Warehouseman's Insurance Policy*

Crystal also argues the Court erroneously submitted Final Instruction Number 6, because whether it failed to maintain a warehouseman's legal liability policy, as referred to in paragraph 3(b) of the instruction, was "a question of law." It must be remembered that the jury found for Crystal on this issue.[11] Crystal argues, however, that "the instruction and evidence of the policy substantially prejudiced Crystal by informing the

---

[9] Hormel's Exhibit 1 at 6.

[10] Verdict Form (docket number 137) at 1.

[11] *See id.*

8

jury that Crystal had an insurance policy which could pay for Hormel's loss, thus undermining the jury's independent judgment as to whether Crystal was even negligent in the first instance for the loss."[12]

Crystal notes that evidence of liability insurance is not admissible to prove negligence. *See* FED. R. CIV. P. 411 ("Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."). Rule 411 further provides, however, that evidence of liability insurance may be admissible "for another purpose." Here, the Warehouse Agreement required Crystal to maintain adequate insurance. In Count II of its Complaint, Hormel asserted Crystal failed to comply with the Agreement. Evidence regarding insurance was admissible for the purpose of determining whether Crystal breached the contract by failing to comply with the requirement that it maintain appropriate insurance. Moreover, as noted by Hormel in its resistance, Crystal also offered evidence in this regard.

### 4. *Proffered Testimony of Mark Ruddy*

Next, Crystal asserts that it is entitled to a new trial because the Court excluded the testimony of its salvage expert, Mark Ruddy. The Court previously addressed this issue in its pretrial ruling on the parties' motions *in limine*.[13] The Court concluded that Ruddy's opinions were not based on sufficient facts or data, his proposed testimony was not the product of a reliable methodology, and that his testimony was "based almost entirely on speculation." Nothing presented at the time of trial or in Crystal's memorandum causes the Court to change its conclusion in that regard. Accordingly, Crystal is not entitled to a new trial on this basis.

---

[12] *See* Crystal's Memorandum (docket number 156-1) at 12.

[13] *See* Ruling on Motions *in Limine* (docket number 120) at 3-6.

9

## 5. Recovery for Damages Reimbursed by a Collateral Source

One of the principal disputes between the parties is whether Hormel's claims are limited to its unreimbursed losses ($1 million), or whether it may recover the full amount of its loss, including the amounts which it must repay its insurers ($4,016,126). This issue was addressed repeatedly by the Court and counsel both before and during the trial. The Court addressed the issue at length in its ruling on Crystal's motions *in limine*.[14] The Court will not prolong this Order by addressing the issue again. For the reasons previously stated, I believe that under the circumstances presented in this case – including Hormel's obligation to repay its insurers for amounts previously received – judgment may enter for the full amount of Hormel's loss.

## 6. Evidence Regarding Subrogation Agreement

In a related claim, Crystal argues that "Hormel produced no evidence at trial establishing it had an agreement with its insures [*sic*] to reimburse its insurers for the full amount of the payments it received, thereby establishing that it is not profiting from its breach of contract action against Crystal."[15] Crystal asserts it "is entitled to judgment notwithstanding the verdict on all damages awarded in excess of $1 million."[16]

In determining the sufficiency of the evidence, the Court must view the evidence most favorably to the nonmoving party and draw all reasonable inferences in its favor. *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008). "Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." *Southern Wine and Spirits of Nevada v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 533 (8th Cir. 2011). "In deciding whether to grant judgment as a matter

---

[14] *Id.* at 15-23.

[15] Crystal's Memorandum (docket number 156-1) at 18.

[16] *Id.* at 19.

10

of law, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." *Id.*

Here, the jury found that "Hormel prove[d] by the greater weight or preponderance of the evidence that it must repay its insurance companies from the proceeds of any recovery from Crystal."[17] The evidence presented by Hormel at the time of trial clearly supports the jury's finding in that regard. Accordingly, Crystal's request for judgment as a matter of law or, alternatively, an amended or altered judgment on this ground is without merit.

### 7. *Claim for Indemnification.*

Finally, Crystal argues that Hormel cannot recover based on claims brought under paragraphs 12 and 16 of the Warehouse Agreement because those paragraphs "apply only to Crystal's indemnification obligation of third-party claims against Hormel, not Hormel's own claims against Crystal."[18] In its brief, Crystal summarily states that Judge McManus incorrectly denied Crystal's motion for summary judgment on this issue."[19] No further argument or citation to authority is provided. Failure to brief an issue in more than a "perfunctory manner," allows a court to consider the issue waived. *Ramirez v. Debs-Elias*, 407 F.3d 444, 447 at n.3 (1st Cir. 2005) (cited with approval in *United States v. Johnson*, 403 F. Supp. 2d 721, 764 (N.D. Iowa 2005)). The Court will not revisit Judge McManus' ruling on this issue.

### B. *Hormel's Motion*

The Court now turns to Hormel's post-trial motion. Hormel asks that the judgment be amended to include prejudgment interest. Noting that in a diversity action, state law governs the award of prejudgment interest, Hormel asks that interest be awarded pursuant

---

[17] Verdict Form (docket number 137) at 3.

[18] Crystal's Memorandum (docket number 156-1) at 19.

[19] *Id.*

11

to Iowa Code sections 535.3(1) and 668.13. Specifically, Hormel asks that interest accrue at the rate of 2.19% per annum from and after the filing of the complaint (February 23, 2009).

In its response, Crystal concedes that Iowa law governs the award of prejudgment interest. Furthermore, Crystal does not dispute that the applicable interest rate is 2.19%. Rather, Crystal asks that the Court deny that portion of Hormel's motion which seeks prejudgment interest on the portion of the judgment which Hormel is required to reimburse its insurers ($3,016,126).

In support of its argument, Crystal notes that "Iowa courts have recognized exceptions to the general rule that prejudgment interest be awarded on all money due on judgments," citing *ABCM Corp. v. Marktech Sys., Inc.*, 2000 WL 34031791 (N.D. Iowa).[20] Iowa courts have created exceptions to the general rule that prejudgment interest is mandatory, recognizing the following categories of exceptions: "(1) punitive damage awards; (2) damages for post-filing injuries; (3) specific performance orders; (4) future damages; (5) Iowa Tort Claims Act liability; and (6) divorce decrees." *Id.* at *3 (quoting *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1246 (8th Cir. 1994); in turn citing *In re Marriage of Baculis*, 430 N.W.2d 399, 402-04 (Iowa 1988)). None of these recognized exceptions are applicable here.[21]

Crystal also renews its argument that because Hormel was paid by its insurers for part of its loss, it may only recover for unreimbursed losses. It follows, according to Crystal, that Hormel may recover prejudgment interest on the unreimbursed amount only. The Court concludes, however, that because Hormel has an obligation to repay its insurers for amounts received, it is entitled to recover the full amount of its loss, including interest.

---

[20] Crystal's Response to Motion to Amend Judgment (docket number 146) at 2.

[21] The Court in *ABCM* concluded that the plaintiff was entitled to prejudgment interest on its actual damages, but was not entitled to prejudgment interest on the punitive damages – a recognized exception to the mandatory interest provision.

12

Accordingly, the judgment will be amended to include interest at the rate of 2.19% per annum from and after February 23, 2009.

## IV. ORDER

For the reasons set forth above, it is **ORDERED** as follows:

1. The Motion for Judgment as a Matter of Law, or to Alter or Amend the Judgment, or for a New Trial (docket number 156) filed by Crystal is **DENIED**.

2. The Motion to Amend Judgment (docket number 141) filed by Hormel is **GRANTED**. The Clerk of Court is directed to enter an amended judgment in the amount of Four Million Sixteen Thousand One Hundred Twenty-Six Dollars ($4,016,126), plus interest at the rate of 2.19 percent per annum from and after February 23, 2009, until paid in full.

DATED this 27th day of June, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA